# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

---------------------------------X

**CROSSCOUNTRY MORTGAGE, LLC**, : CASE NO:
a Delaware limited liability company, :
6850 Miller Road :
Brecksville, Ohio 44141 :
 :
 :
 :
 Plaintiff, :
 :
 v. :
 :
**IMPAC MORTGAGE HOLDINGS, INC.**, : **COMPLAINT FOR TRADEMARK**
a Maryland corporation; and : **INFRINGEMENT**
 :
**IMPAC MORTGAGE CORP.**, a California : (Trademark Infringement, Unfair
corporation, dba **CASHCALL MORTGAGE** : Competition, and Deceptive Trade
19500 Jamboree Road, Suite 200 : Practices)
Irvine, CA 92612 :
 :
 Defendants. :

---------------------------------X

Plaintiff, CrossCountry Mortgage, LLC ("Plaintiff"), by and through its attorneys, Brouse McDowell, LPA, for its Complaint against defendants, IMPAC Mortgage Holdings, Inc. and IMPAC Mortgage Corp. dba CashCall Mortgage (each a "Defendant", and collectively, the "Defendants"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action for infringement of Plaintiff's federally-registered trademark under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for substantial and related claims of deceptive trade practice under the statutory and common laws of

the State of Ohio (Sections 4165.01 et seq., Revised Code), all arising from the Defendants' unauthorized use of Plaintiff's trademark in connection with the distribution, marketing, advertising, promotion, offering for sale, and/or sale of Defendants' services.

2. Plaintiff seeks injunctive and monetary relief.

## JURISDICTION

3. This is an action for trademark infringement and unfair competition. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C § 1121, 28 U.S.C. §§ 1331, and 1338(a) and (b), pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367, and the pendent jurisdiction of this Court. This action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, whereby the Court also has diversity jurisdiction under 28 U.S.C § 1332(a).

## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) in that both corporate defendants are subject to personal jurisdiction, and therefore reside, in this district, and/or 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

5. Plaintiff is a limited liability company formed under the laws of the State of Delaware and has its principal place of business in the State of Ohio at 6850 Miller Road, Brecksville, Ohio 44141. Plaintiff provides and sells, among other things, mortgage banking services, namely, origination, acquisition, servicing, securitization, brokerage of mortgage loans

and other related services in connection with its trademark consisting of the letters "CCM" ("CCM Mark"). Plaintiff owns two federal trademark registrations featuring its CCM Mark and several applications to register its CCM Mark in connection with mortgage banking services.

6. Defendant, IMPAC Mortgage Holdings, Inc. ("IMPAC Holdings"), is a corporation that is incorporated in Maryland and has its principal place of business in California at 19500 Jamboree Road, Suite 200, Irvine, California 92612. IMPAC Holdings is the parent company of Defendant, IMPAC Mortgage Corp. dba CashCall Mortgage ("CashCall"). Upon information and belief, IMPAC licenses trademarks to CashCall for CashCall's use in mortgage banking services. Using a website with national reach, and other marketing and sales avenues, IMPAC promotes and advertises the mortgage banking services provided by CashCall. IMPAC presently conducts business and provides advertising and other support to CashCall for the sale of mortgage banking services, and other services, in the State of Ohio.

7. CashCall is a corporation that is incorporated in California and has its principal place of business in California at 19500 Jamboree Road, Suite 200, Irvine, California 92612. CashCall provides and sells, among other things, loan products for consumers to refinance mortgages, purchase homes and purchase investment properties in connection with a trademark which incorporates the letters "CCM" therein in a manner that is confusingly similar to Plaintiff's CCM Mark. CashCall is licensed to do business in and does presently conduct business, including mortgage banking services, in the State of Ohio and in this judicial district.

**FACTS**

A.    <u>Plaintiff and its Mark</u>

8.    Plaintiff is the owner of valid and subsisting United States Trademark Mark Registration No. 6068900 on the Principal Register in the United States Patent and Trademark Office ("USPTO") for a design mark featuring its CCM Mark ("CCM Logo Registration") in connection with "mortgage banking services, namely, origination, acquisition, servicing, securitization, and brokerage of mortgage loans" ("Plaintiff's Services"), in Class 36. The literal element in the CCM Logo Registration is "CCM." Attached as Exhibit A is a true and correct copy of the registration certificate for Plaintiff's United States Trademark Registration No. 6068900, which was issued by the United States Patent and Trademark Office on June 2, 2020.

9.    Plaintiff is the owner of valid and subsisting United States Trademark Mark Registration No. 6074158 on the Principal Register in the USPTO for a design mark featuring its CCM Mark ("CCM CROSSCOUNTRY MORTGAGE Registration") in connection with Plaintiff's Services in Class 36. The literal element in this registration is "CCM CROSSCOUNTRY MORTGAGE." Attached as Exhibit B is a true and correct copy of the registration certificate for Plaintiff's United States Trademark Registration No. 6074158, which was issued by the USPTO on June 9, 2020.

10.    Plaintiff is the owner of two pending federal trademark applications, one being SN No. 90807031 for the CCM Mark in standard characters, and SN No. 90848361 for the CCM Mark in another design logo form (together "Plaintiff's Applications"). Both applications seek registration in connection with Plaintiff's Services, in Class 36. Both applications are suspended pending action on a federal trademark application owned by IMPAC Holdings.

11. Plaintiff has used the CCM Mark in commerce throughout the United States continuously since July 12, 2018, in connection with the distribution, provision, offering for sale, sale, marketing, advertising and promotion of Plaintiff's Services. Attached hereto as Exhibit C are copies of representative samples of marketing, advertising, and promotional materials showing Plaintiff's use of the CCM Mark in connection with these services.

12. As a result of its widespread, continuous, and exclusive use of the CCM Mark to identify its services and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the CCM Mark.

13. Plaintiff's CCM Mark is distinctive to both the consuming public and Plaintiff's trade.

14. Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting Plaintiff's Services sold under the CCM Mark including through its website, promotional advertisements in print and video formats, sponsored events and various marketing, advertising and promotional efforts and channels for services under its CCM Mark.

15. Plaintiff provides and sells its services under the CCM Mark through loan officers and its website – www.ccm.com. Plaintiff's Services are also available to the public nationally through third-parties.

16. Plaintiff offers and sells its services under its CCM Mark to individuals seeking mortgage loans, home refinancing, or home equity loans. Since Plaintiff began using the CCM mark in 2018, Plaintiff has won the following awards for its services and company culture, building strength, value and prestige in the CCM mark:

 (a) Smart Culture Award, Smart Business: 2022

 (b) Best Workplace, NorthCoast 99: 2021 (5 times since 2016)

 (c) Inc. 5000 List of America's Fastest Growing Companies:

 (d) Top Workplaces, The Plain Dealer & Cleveland.com: 2021

 (e) Home Possible RISE Award®, Freddie Mac: 2020-2021

 (f) Top Workplace, Weatherhead: 2020

 (g) Top 10 Best Lender, ConsumersAdvocate.org: 2019

 (h) Q2 Top 3 Mortgage Rates, FreeRateUpdate.com: 2019

 (i) Sales & Growth, Weatherhead Centurion: 2018-2019

 (j) Entrepreneur of the Year, Ernst & Young: 2018

 (k) Top Company Culture, *Entrepreneur* magazine: 2018

17. As a result of Plaintiff's expenditures and efforts, the CCM Mark has come to signify the high quality of the services designated by the CCM Mark, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff.

B. <u>Defendant's Unlawful Activities</u>

18. Defendants are engaged in mortgage lending services, namely "fast and responsible mortgage financing," including refinancing loans, loans for veterans, conventional home loans, and other mortgage loan products.  See, www.cashcallmotgage.com/AboutUs.

19. Without Plaintiff's authorization, and upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in its CCM Mark, Defendants adopted and began using a mark confusingly similar to Plaintiff's CCM Mark (hereinafter, the "Infringing Mark") in US commerce.

20. The Infringing Mark adopted and used by Defendants is confusingly similar to Plaintiff's CCM Mark. The Infringing Mark is comprised of the letters "CCM" in very large print over the words "CashCall Mortgage" in small print. Thus, the Infringing Mark incorporates the entirety of Plaintiff's CCM Mark therein.

21. Subsequent to Plaintiff's first use of CCM, Defendant has been engaged in the distribution, provision, advertising, promotion, offering for sale, and sale of services using the Infringing Mark throughout the United States. On information and belief, Defendants have continued to use "CCM" in the manner alleged until the present time. Attached hereto as Exhibit D are true and correct copies of representative samples of marketing, advertising, and promotional materials showing Defendant's use of the Infringing Mark.

22. The services Defendants have distributed, provided, marketed, advertised, promoted, offered for sale, and sold under the Infringing Mark are related and in close competitive proximity to Plaintiff's Services as both Plaintiff's and Defendants' services concern mortgage lending, namely origination and acquisition of mortgage loans sold to a nationwide marketplace.

23. Defendant has distributed, provided, marketed, advertised, promoted, offered for sale, and sold its services under the Infringing Mark through loan servicers, Defendants' websites, www.cashcallmortgage.com, and www.impaccompanies.com.

24. Defendants have marketed, advertised, and promoted their services under the Infringing Mark through their websites and other marketing, advertising and promotional channels that are similar and overlap with the marketing channels used by Plaintiff to promote its services.

25. Defendants offer and sell services under the Infringing Mark to individuals seeking many different kinds of mortgage loans and refinancing loans.

26. Defendant IMPAC Holding owned an application to register the mark CCM CASHCALL MORTGAGE for mortgage lending services in Class 36 (SN 88822915), filed March 5, 2020. On June 2, 2020, the USPTO issued an Office Action, among other things, noting a potential Section 2(d) refusal to register based on a pending application SN 88679388, the application that matured into Plaintiff's CCM Logo Registration. On December 3, 2020, the USPTO issued another Office Action, refusing registration based on Plaintiff's CCM Logo Registration. The USPTO stated that Defendant's applied-for mark was confusingly similar to Plaintiff's registered mark, and that Plaintiffs and Defendants' services were considered related.

27. As the deadline for responding to the Office Action approached, Defendant IMPAC Holdings, through counsel, contacted Plaintiff's General Counsel. Defendant asked whether Plaintiff would be willing to enter into a consent agreement regarding use of the CCM Mark. Plaintiff's General Counsel responded on June 10, 2021 that Plaintiff would not enter a consent agreement because it agreed with the USPTO's determination that Defendant's use of the CCM Mark would cause confusion in the marketplace.

28. On July 2, 2021, the USPTO issued a Final Refusal for Defendant IMPAC Holding's CCM CASHCALL MORTGAGE registration application because of the likelihood of confusion with Plaintiff's senior CCM Logo Registration, noting that the marks were "identical in part" such that use of both marks may lead to consumer confusion, particularly since the parties' services were related.

8

29. However, despite the USPTO's refusal to register CCM CASHCALL MORTGAGE, and Plaintiff's rejection of a consent agreement and express statement that Defendants' use of the CCM Mark would cause confusion in the marketplace, Defendant IMPAC Holdings filed a new application with the USPTO to register CCM CASH CALL MORTGAGE in a design logo with "CCM" featured prominently in the design. Defendant filed application SN 90774717 on June 15, 2021, only five days after receiving Plaintiff's rejection of a consent agreement and Plaintiff's conclusion that Defendants' use of CCM was confusingly similar to Plaintiff's CCM Mark. In filing the application SN 90774717, Defendant IMPAC Holdings, through counsel, verified that no other person had rights to use a mark that was confusingly similar to the applied-for mark, per 15 USC 1051 (a)(3)(D).

30. Despite multiple conclusions from multiple sources, including the USPTO, and a factual record that supports the conclusion that Defendants' use of "CCM" is confusingly similar to Plaintiff's use of its earlier existing CCM Mark, Defendants continued to use the Infringing Mark to promote and sell its mortgage services.

31. Defendants continued to use the Infringing Mark to promote and sell its mortgage services despite Plaintiff's rejection of Defendants' proposal to enter into a consent agreement for Plaintiff to authorize Defendants' use of the Infringing Mark.

32. On April 1, 2022, Plaintiff's counsel sent a cease and desist letter to Defendants objecting to Defendants' use of the Infringing Mark. Attached hereto as Exhibit E is a true and correct copy of Plaintiff's counsel's cease and desist letter to Defendants.

33. Upon receipt of Plaintiff's counsel's cease and desist letter, Defendants did not cease use of the Infringing Mark and did not comply with the demands set out therein.

34. By letter dated April 11, 2022, counsel for Defendants notified counsel for Plaintiff that, despite acknowledgment of Plaintiff's ownership of the CCM Mark and registration with the USPTO thereof, Defendants refuse to cease use of the Infringing Mark and the letters "CCM". Defendant IMPAC Holding also refused to withdraw application SN 90774717, its application to register a mark confusingly similar to Plaintiff's CCM Mark. Application SN 90774717 is the subject of an Office Action issued on March 7, 2022 refusing registration because of the likelihood of confusion with Plaintiff's CCM Logo Registration. Application SN 90774717 was cited by the USPTO in a March 22, 2022 notice to Plaintiff stating that Plaintiff's Applications were suspended pending resolution of Defendant's Application SN 90774717, since it was considered a potentially conflicting pending application.

35. Defendants' use of the Infringing Mark was and is without the consent of Plaintiff and infringes the rights of Plaintiff. On information and belief, such use was and is with full knowledge of Plaintiff's prior ownership and use of Plaintiff's CCM Mark and name with the intent and purpose of misleading and deceiving the public, and of unfairly trading upon Plaintiff's goodwill.

36. Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

37. Upon information and belief, Defendants' acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's CCM Mark, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's services to the Defendants.

38. Defendants' acts are causing, and unless restrained, will continue to cause damage and irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

## COUNT ONE (Federal Trademark Infringement)

39. Plaintiff repeats and realleges paragraphs 1 through 38 hereof, as if fully set forth herein and incorporates them in this Count One by reference.

40. Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff. Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

41. Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the CCM Mark and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

42. Defendants' conduct is causing irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

43. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT TWO (Federal Unfair Competition)**

44. Plaintiff repeats and realleges paragraphs 1 through 43 hereof, as if fully set forth herein and incorporates them in this Count Two by reference.

45. Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

46. Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

47. Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

48. Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49. Defendants' conduct as alleged herein is causing irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

50. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT THREE (Deceptive Trade Practices)**

51. This count is for violation of the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.02(A)(2) and (3). Plaintiff repeats and realleges paragraphs 1 through 50 hereof, as if fully set forth herein and incorporates them in this Count Three by reference.

52. By the acts as above alleged, Defendants have, in the course of their business, knowingly engaged in deceptive trade practices by causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services. Defendants have, in the course of their business knowingly engaged in deceptive trade practices by causing a likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another.

53. Plaintiff has been damaged by such infringement in an amount which cannot be determined without an accounting, and such damage will continue irreparably unless such acts are enjoined by this Court.

54. Plaintiff has suffered actual damages as a result of Defendants' deceptive trade practices.

55. Defendants have willfully engaged in use of the Infringing Mark, thereby causing a likelihood of confusion and/or likelihood of unauthorized affiliation, in a manner that demonstrates knowing deceptive trade practices.

## COUNT FOUR (Common Law Unfair Competition)

56. Plaintiff repeats and realleges paragraphs 1 through 55 hereof, as if fully set forth herein and incorporates them in this Count Four by reference.

57. Defendants' infringing acts as alleged herein constitute unfair competition in violation of Ohio common law.

58. Defendants' infringing acts as alleged herein have caused and are causing great and irreparable harm and damage to Plaintiff, and unless permanently retained by this Court, said irreparable injury will continue.

## COUNT FIVE (Common Law Trademark Infringement)

59. Plaintiff repeats and realleges paragraphs 1 through 58 hereof, as if fully set forth

herein and incorporates them in this Count Five by reference.

60. Defendants' infringing acts as alleged herein constitute trademark infringement in violation of Ohio common law.

61. Defendants' infringing acts as alleged herein have caused and are causing great and irreparable harm and damage to Plaintiff, and unless permanently retained by this Court, said irreparable injury will continue.

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1. That Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114); and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a).

2. That Defendants have violated the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.02.

3. Granting an injunction permanently enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

    a. providing, selling, marketing, advertising, promoting, or authorizing any third party to provide, sell, market, advertise or promote any goods or services bearing the Infringing Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's CCM Mark;

    b. engaging in any activity that infringes Plaintiff's rights in its CCM Mark;

    c. engaging in any activity constituting unfair competition with Plaintiff;

  d. engaging in any activity that is likely to dilute the distinctiveness of Plaintiff's CCM Mark;

  e. registering or applying to register or continuing efforts to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Infringing Mark or any other mark that infringes or is likely to be confused with Plaintiff's CCM Mark, or any goods or services of Plaintiff, or Plaintiff as their source; and

  f. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (e).

4. Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's services.

5. Directing Defendants to immediately cease all display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the Infringing Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's CCM Mark, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendants' services to cease forthwith the display, distribution, marketing, advertising,

16

promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the Infringing Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's CCM Mark, and to immediately remove them from public access and view.

6. Directing that Defendants recall and deliver up for destruction or other disposition all packaging, advertisements, promotions, signs, displays, and related materials incorporating or bearing the Infringing Mark or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's CCM Mark.

7. Directing Defendants to formally abandon with prejudice any and all of its applications to register the Infringing Mark or any mark consisting of, incorporating, or containing Plaintiff's CCM Mark or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry.

8. Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with the Court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the Court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith.

9. Directing that Defendants account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

10. Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

11. Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

12. Awarding such other and further relief as the Court deems just and proper.

Date: August 4, 2022                      Respectfully submitted,

                                           /s/ *Suzanne Bretz Blum*
                                           Suzanne Bretz Blum (0047231)
                                           Brouse McDowell LPA
                                           600 Superior Avenue East, Suite 1600
                                           Cleveland, OH 44114
                                           Tel: (216) 830-6830
                                           Fax: (216) 830-6807
                                           sblum@brouse.com
                                           Counsel for Plaintiff